THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

JILL SCHULTZ AND
FRANCES FRANCIS,

        Plaintiffs,               3:20-CV-543

v.                                    (JUDGE MARIANI)

LACKAWANNA COUNTY,
LACKAWANNA COUNTY DISTRICT
ATTORNEY'S OFFICE, DISTRICT
ATTORNEY MARK POWELL,
BRIAN FINNERTY,
In their individual and official capacities,

        Defendants.

## MEMORANDUM OPINION

### I. INTRODUCTION

On April 2, 2020, plaintiffs Jill Schultz and Frances Francis, ("Plaintiffs"), filed a complaint, (the "Complaint"), asserting claims for First and Fourteenth Amendment violations. (Doc. 1). These claims, based under 42 U.S.C. § 1983, were raised against defendants Lackawanna County, Lackawanna County District Attorney's Office, District Attorney Mark Powell, and Brian Finnerty, (collectively, "Defendants"), in their individual and official capacities. They include a First Amendment retaliation claim for the alleged violation of Plaintiffs' rights to free speech (Count I), a First Amendment retaliation claim for the alleged violation of Plaintiffs' rights to association (Count II), an equal protection claim against the individual Defendants for the alleged violation of Plaintiffs' procedural due

process rights under the Fourteenth Amendment (Count III), a separate equal protection claim against all Defendants for an alleged violation of Plaintiffs' rights under the Fourteenth Amendment (Count IV), and a First Amendment retaliation claim for an alleged violation of plaintiff Francis's First Amendment rights of speech and association (Count V).

Presently before the Court is the Defendants' Motion to Dismiss the Plaintiffs' Complaint. (Doc. 9). For the reasons set forth below, the Court will grant the Defendants' Motion and Dismiss the Plaintiffs' claims against the defendant Lackawanna County District Attorney's Office, claims against defendants Powell and Finnerty in their official capacities, claims for punitive damages as to the municipal employees in their official capacities, and equal protection claims alleging discrimination against Plaintiffs on the basis of their gender.

## II. PROCEDURAL HISTORY AND FACTUAL ALLEGATIONS

Plaintiffs Jill Schultz and Frances Francis were employed by the Lackawanna County District Attorney's Office, (the "LCDA's Office"), and worked as administrative secretaries for the office for well over a decade. (Doc. 1 at ¶¶ 6-11). During her time at the LCDA's Office, plaintiff Francis also served as the chief union steward for the Lackawanna County Service Employees International Union, ("SEIU"), while plaintiff Schultz acted as grant administrator for the LCDA Office. (Id. at ¶¶ 12, 13). Separate and apart from these duties, however, the Plaintiffs were also "ardent supporters of the Republican Party, which controlled the LCDA office for nearly fifty years." (Id. at ¶ 14). In November 2017, the Plaintiffs were thus active in the campaign of Gene Talerico, who was running as the Republican candidate for the

open Lackawanna County District Attorney post. (Id. at ¶ 24). As part of their efforts to support the Talerico campaign, Plaintiffs "attended Talerico campaign events, placed lawn signs in public, and made posts supporting Talerico and his candidacy on social media." (Id. at ¶ 25).

On November 7, 2017, however, an election was held and defendant Mark Powell, the candidate of the Democratic Party, was elected as the Lackawanna County District Attorney. (Doc. 1 at ¶ 21). Defendant Powell thereafter assumed the office of Lackawanna County District Attorney and appointed defendant Finnerty as the Human Resources Generalist for the LCDA's Office. (Id. at ¶ 22). The Plaintiffs remained in their posts and were under the supervisions of both defendants Finnerty and Powell. (Id.). Throughout the remainder of their employment, the Plaintiffs allege that they had a series of confrontations with defendants Finnerty and Powell and faced several changes in policy that infringed upon their ability to properly complete their work.

Starting in January 2018, Plaintiffs claim that the Defendants "criticized Plaintiff's Schultz's productivity," moved plaintiff Schultz's office without reason, initiated a "paradoxical policy" that precluded administrative staff from working beyond 4:30 p.m., and targeted Schultz's work product as means of retaliation for her "support of the outgoing Republican District Attorney." (Doc. 1 at ¶¶ 28-31). Plaintiffs further argue that on February 23, 2018, defendant Powell issued a written warning claiming that plaintiff Francis had violated the standard of conduct by making false allegations regarding Powell and

3

spreading rumors of potential terminations within the LCDA's Office. (Id. at ¶ 32). In addition, the Plaintiffs allege that defendant Finnerty "began a pattern of harassment against Plaintiffs by making derogatory remarks, frequently requesting in person meetings during which Plaintiffs would be alone behind closed doors with Finnerty and criticizing Plaintiffs' work performance," and that the Defendants were harassing members of the SEIU, which led members to file a grievance – with plaintiff Francis's assistance – against defendant Finnerty. (Id. at ¶¶ 34, 38). As a result of this grievance, SEIU members provided testimony during the internal investigative process claiming that defendant Finnerty "was selectively aggressive and hostile towards SEIU members and created a hostile work environment for the Plaintiffs." (Id. at ¶ 39).

The Plaintiffs further claim they were denied raises in October 2018 even though raises were granted to those individuals who supported defendant Powell in his election campaign. (Doc 1 at ¶ 40). Plaintiffs were thereafter forced to undergo a due process hearing in November in response to allegations that they had not completed their work in a timely manner. (Id. at ¶ 41). Finally, in April 2019, the apparent conflict between the Plaintiffs and Defendants escalated when plaintiff Francis attempted to utilize vacation leave. Though plaintiff Francis alleges she marked her leave in the vacation log that had historically been used for such purposes, the Defendants asserted that Francis failed to mark a secondary log introduced and managed by defendant Finnerty. (Id. at ¶¶ 46, 47). As a result of this omission, the Plaintiffs argue they were thereafter unlawfully terminated

based upon defendant Powell's determination that Francis, with plaintiff Schultz's help, took vacation without providing advanced notice, and that together they lied about and doctored the scheduling book. (Id.).

### III. STANDARD OF REVIEW

A complaint must be dismissed under Federal Rule of Civil Procedure 12(b)(6) if it does not allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 505 U.S. 544, 570 (2007). The plaintiff must assert "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

"While a complaint attached by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (internal citations, alterations, and quotation marks omitted). In other words, "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Covington v. Int'l Ass'n of Approved Basketball Offs.*, 710 F.3d 114, 118 (3d Cir. 2013) (internal citations and question marks omitted).

A court "take[s] as true all the factual allegations in the Complaint and the reasonable inferences that can be drawn from those facts, but ... disregard[s] legal conclusions and threadbare recitals of the elements of a cause of action, supported by mere

conclusory statements." *Ethypharm S.A. France v. Abbott Labs.*, 707 F.3d 223, 231 n. 14 (3d Cir. 2013) (internal citation and quotation marks omitted). Thus "the presumption of truth attaches only to those allegations for which there is sufficient 'factual matter' to render them 'plausible on [their] face.'" *Schuchardt v. President of the United States*, 839 F.3d 336, 347 (3d Cir. 2016) (alterations in original) (quoting *Iqbal*, 556 U.S. at 679). "Conclusory assertions of fact and legal conclusions are not entitled to the same presumption." *Id.*

> *Twombly* and *Iqbal* require [a district court] to take the following three steps to determine the sufficiency of a complaint: First, the court must take note of the elements a plaintiff must plead to state a claim. Second, the court should identify allegations that, because they are no more than conclusions, are not entitled to the assumption of truth. Finally, where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief.

*Connelly v. Steel Valley Sch. Dist.*, 706 F.3d 209, 212 (3d Cir. 2013). "Although the plausibility standard 'does not impose a probability requirement,' it does require a pleading to show 'more than a sheer probability that a defendant has acted unlawfully.'" *Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 786 (3d Cir. 2016) (internal citation omitted) (first quoting *Twombly*, 550 U.S. at 556; then quoting *Iqbal*, 556 U.S. at 678).

"The plausibility determination is 'a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'" *Id.* at 786-87 (quoting *Iqbal*, 556 U.S. at 679). The Court, however, does not "require heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face" and "nudge [a plaintiff's] claims across the line from conceivable to plausible." *Twombly*, 550

U.S. at 547; see also Iqbal, 556 U.S. at 680 (citing Twombly) (finding that respondent had failed to plead sufficient facts to state a claim for purposeful and unlawful discrimination as "respondent's complaint ha[d] not 'nudged [his] claims' of invidious discrimination 'across the line from conceivable to plausible'").

## IV. ANALYSIS

The Plaintiffs concede that the claims against defendant Lackawanna County District Attorney's Office should be dismissed, as should the claims against defendants Powell and Finnerty in their official capacities. Likewise, the Plaintiffs concede that their claims for punitive damages should be limited to defendants Powell and Finnerty in their individual capacities, thus allowing this Court to dismiss the other punitive claims. Therefore, from the Defendants' Motion to Dismiss, the only remaining issue is whether the Plaintiffs have pled sufficient facts to support their two claims under the Fourteenth Amendment.

To state a claim for a violation of the Equal Protection Clause under 42 U.S.C. § 1983, a plaintiff must show that: (1) the government official is treating the plaintiff differently from similarly situated persons, and (2) the selective treatment was motivated by an intention to discriminate on the basis of impermissible considerations. Discriminatory intent can be found even where there is no direct proof that the decision makers harbored an evil motive. Plaintiffs argue that their "allegations establish that their equal-protection claim is based on a hostile work environment," and that a "plaintiff can assert an equal-protection

7

claim under 42 U.S.C. § 1983 for a hostile work environment." (Doc. 14 at 5 (citing *Olsen v. Ammons*, 2009 WL 4573581, at *8 (M.D. Pa. Dec. 1, 2009)).[1] Though the Plaintiffs fail to directly state in either Count III or Count IV of their Complaint that their equal-protection claims were based on a hostile work environment, the standard upon which the Plaintiffs rely, as in any class-based equal-protection claim, requires a showing that they faced discrimination due to their membership within that class, in this case, gender.

The Plaintiffs allege in their Complaint that "[i]n the [s]pring of 2018, Defendant Finnerty, at Powell's direction, began a pattern of harassment against Plaintiffs by making derogatory remarks, frequently requesting in person meetings during which Plaintiffs would be alone behind closed doors with Finnerty and criticizing Plaintiffs' work performance." (Doc. 1 at ¶ 34). The Plaintiffs further allege that "[i]n late May of 2018, multiple female SEIU staff members complained to Plaintiff, Francis, as the SEIU Shop Steward, that Defendant Finnerty was targeting and harassing them and otherwise acting in a hostile manner towards them," whereafter the SEIU filed a grievance "organized" by plaintiff Francis against Finnerty alleging that "through his harassing behavior towards employees,

---

[1] Plaintiffs, citing *Pollock v. City of Philadelphia*, 2008 WL 3457043, at *8 (E.D. Pa. Aug.8, 2008), state that "in order to prove a gender-discrimination equal-protection claim arising from a hostile work environment, a plaintiff must show: (1) that she suffered intentional discrimination because of her gender; (2) the discrimination was severe or pervasive; (3) the discrimination detrimentally affected the plaintiff; (4) the discrimination would detrimentally affect a reasonable person of the same gender in that position; and (5) a basis for personal liability." (Doc. 14 at 5).

8

[he] created a hostile work environment." (Id. at ¶¶ 35, 37). Plaintiffs, in conclusion, claim that:

> As a result of the above hostile work environment Grievance, six female SEIU members, including both named Plaintiffs, were interviewed in the investigative process and stated that Defendant Finnerty was selectively aggressive and hostile towards SEIU members and created a hostile work environment for the Plaintiffs. Finnerty was necessarily aware of Plaintiffs, Francis['] and Schultz's critical statements toward Finnerty, which included remarks about Finnerty's pension [sic] for isolating female employees behind closed doors.

(Id. at ¶ 39) (emphasis added). Nevertheless, nothing within these sections, highlighted by the Plaintiffs in their briefing in opposition to the Defendants' Motion to Dismiss, clearly supports a cause of action alleging that the Defendants were purposefully discriminating against the Plaintiffs or other "female SEIU staff members" because of their gender.[2]

Though the Plaintiffs mention that defendant Finnerty was "targeting and harassing" female members of the SEIU staff, Plaintiffs have made no allegations that these SEIU members were targeted because of their gender. More specifically, Plaintiffs claim that those same staff members stated, when interviewed, that Finnerty was "selectively aggressive and hostile *towards SEIU members*," (Doc. 1 at ¶ 39) (emphasis added), which seemingly makes any alleged discrimination tied more to membership in the SEIU than

---

[2] Within their Complaint, Plaintiffs broadly allege that "Defendants Powell and Finnerty discriminated against Plaintiffs on the basis of their gender." Even accepting the Plaintiffs' other adopted and incorporated allegations within the Complaint, however, such conclusory assertions lack any clear support within the Complaint through which the Court could identify the basis of their gender claims as they pertained specifically to the Plaintiffs. *See Albrecht v. Hamilton*, 233 F.App'x. 122, 125 (3d Cir. 2007) (dismissing a Section 1983 claim pursuant to Federal Rule of Civil Procedure 8(a) where the plaintiff failed to state "'a short and plain statement of the claim' that will give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." (citation omitted)).

gender. Furthermore, the main language upon which the Plaintiffs rely in their briefing to support their contention that they met their burden is that they allege a "pattern" of activity exhibited by the Defendants where defendant Finnerty "frequently" demanded private closed-door meetings with female SEIU members. (Doc. 14 at 6). Though a pattern of activity may lead a court to draw inferences regarding discriminatory policies or practices,[3] the Plaintiffs' pleadings, taken as true as to their properly pleaded factual allegations, fail to assert that this pattern was indicative of gender-based discrimination rather than the discrimination based on the Plaintiffs' political activism or union activities that have been sufficiently alleged within their Complaint.

As the Plaintiffs have failed to plead sufficient facts to support a claim for a violation of the Equal Protection Clause under 42 U.S.C. § 1983 based on gender, the Defendants' Motion to Dismiss Plaintiffs' equal-protection claims, (Counts III and IV), will be granted without prejudice and the Plaintiffs will be granted leave to amend their Complaint as to these two claims to the degree that such amendments would not be futile.

---

[3] Though the Plaintiffs have failed to provide facts to identify unconstitutional discrimination based on gender, "for a municipality to be liable under a municipal policy or custom theory, the plaintiff needs to point to a specific policy or a custom that caused his injury." *Jones v. Cty. of York*, 2020 WL 3892878, at *4 (M.D. Pa. July 10, 2020). The Court will not now analyze whether the Plaintiffs have identified a clear policy or custom, but a "plaintiff presenting an unconstitutional policy must point to an official proclamation, policy or edict by a decisionmaker possessing final authority to establish municipal policy on the relevant subject." *Forrest v. Parry*, 930 F.3d 93, 105-06 (3d Cir. 2019).

## V. CONCLUSION

For the aforementioned reasons, Defendants' Motion to Dismiss for failure to state a claim upon which relief may be granted as to Count III and Count IV of the Plaintiffs' Complaint will be granted without prejudice. The Court will also dismiss with prejudice the Plaintiffs' claims against defendant Lackawanna County District Attorney's Office, claims against defendants Powell and Finnerty in their official capacities, and claims for punitive damages as to the municipal employees in their official capacities. A separate Order will follow.

_____
Robert D. Mariani
United States District Judge